IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:10-CT-3069-D

| | |
|---|---|
| DENNIS EDWARD PHILLIPS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  **ORDER** |
| | ) |
| MARJUSRI BASU, et al., | ) |
| | ) |
| Defendants. | ) |

On May 12, 2010, Dennis Edward Phillips ("Phillips" or "plaintiff"), a state inmate proceeding pro se, initiated this action pursuant to 42 U.S.C. § 1983, Compl. [D.E. 1], and filed an affidavit [D.E. 4], and a motion to appoint counsel [D.E. 5]. Phillips seeks leave to proceed in forma pauperis [D.E. 2]. On February 1, 2011, the court reviewed the complaint and allowed Phillips's claim for deliberate indifference to a serious medical need to proceed against defendants Basu, Walker, Parekh, Igboekwe,[1] and McDevitt[2] [D.E. 11]. On November 3, 2011, the court granted McDevitt's motion for summary judgment [D.E. 52]. On November 4, 2011, Magistrate Judge William A. Webb entered a scheduling order [D.E. 53].

On December 19, 2011, Phillips moved for production of medical records and other discovery [D.E. 57],[3] to which defendants responded in opposition [D.E. 67–68]. On December 21, 2011, Basu and Igboekwe moved for a protective order [D.E. 58], to which Phillips responded in

---

[1] In his complaint, Phillips spelled this defendant's name as Igoekwe. The correct spelling is Igboekwe. See [D.E. 52] 1 n.1.

[2] In his complaint, Phillips spelled this defendant's name as McDivett. The correct spelling is McDevitt. See [D.E. 52] 1 n.2.

[3] Phillips failed to sign his motion, see [D.E. 57, 60], and on December 29, 2011, Phillips refiled the motion with an original signature [D.E. 62].

opposition [D.E. 63]. On December 30, 2011, Phillips filed a motion to deny qualified immunity to Basu and Igboekwe [D.E. 64], and a letter entitled, "Affirmation to Court" [D.E. 65]. On March 23, 2012, Phillips filed a motion for medical records [D.E. 93], to which Igboekwe, Basu, and Parekh responded in opposition [D.E. 98, 100], and a request for admissions from Parekh [D.E. 95], to which Parekh responded [D.E. 102].

On February 1, 2012, having obtained extensions of time [D.E. 54–55, 61, 66], Parekh, Igboekwe, and Basu filed motions for summary judgment [D.E. 73, 76–77]. Pursuant to Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam), the court notified Phillips about the motions, the consequences of failing to respond, and the response deadlines [D.E. 82]. On March 23, 2012, having obtained an extension of time [D.E. 83, 87], Phillips responded in opposition to all three motions [D.E. 89–91], requested reconsideration of the court's ruling concerning his medical records [D.E. 92], and submitted a letter concerning his criminal conviction [D.E. 96].

On April 1, 2012, the court noted that Walker (a former nurse at the Burke Catawba District Confinement Center ("Burke")) had not been served with the complaint. The court also noted that the court had attempted to obtain an address for service on Walker and had been unable to do so, and directed Phillips to show cause why Walker should not be dismissed without prejudice pursuant to Federal Rule of Civil Procedure 4(m) [D.E. 101]. On April 27, 2012, Phillips filed a response to the court's order, which the clerk docketed as a motion [D.E. 103]. On May 9, 2012, the court granted Phillips's motion to the extent it sought service on Walker at an address provided by Phillips, and directed the United States Marshals Service ("USMS") to attempt to serve Walker [D.E. 104]. On May 30, 2012, the USMS filed a return of service on Walker [D.E. 106].[4] On June 8, 2012, Walker

_____

[4] Thus, the court denies as moot Phillips's "motion to the court for production of U.S. Marshal[s] Service Receipt over this matter to defendant Jeff Walker" [D.E. 94].

2

filed a pro se answer to the complaint and motion to dismiss [D.E. 107–08]. Pursuant to Roseboro, 528 F.2d at 310, the court notified Phillips about the motion, the consequences of failing to respond, and the response deadline [D.E. 109]. On June 26, 2012, Phillips responded in opposition to Walker's motion to dismiss [D.E. 110]. As explained below, the court grants defendants' motions for protective orders, for summary judgment, and to dismiss.

I.

First, the court addresses the parties' motions relating to discovery [D.E. 57–58, 86, 93, 95].

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Fed. R. Civ. P. 26(b)(1). "[D]iscovery rules are to be accorded a broad and liberal treatment to effect their purpose of adequately informing the litigants in civil trials." Herbert v. Lando, 441 U.S. 153, 177 (1979); see Hickman v. Taylor, 329 U.S. 495, 507 (1947). However, a litigant is not entitled to conduct discovery that is intended to harass, annoy, embarrass, or oppress, or that causes undue burden or expense to the opposing party. See Fed. R. Civ. P. 26(c). Additionally, the court enjoys broad discretion in evaluating motions to compel discovery. See Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc., 43 F.3d 922, 929 (4th Cir. 1995); Erdmann v. Preferred Research, Inc., 852 F.2d 788, 792 (4th Cir. 1988); LaRouche v. Nat'l Broad. Co., Inc., 780 F.2d 1134, 1139 (4th Cir. 1986).

Phillips seeks "to . . . obtain his N.C. Dept [sic] of Correction [sic] medical records along with other private hospital[] records" and any witnesses and exhibits any defendant intends to use at trial [D.E. 57] 1–2; see also [D.E. 93] 1–2. Parekh asserts that she has "produced medical records

3

to plaintiff regarding treatment that plaintiff received from Parekh at UNC Hospitals in Chapel Hill in 2007 and 2008," along with "a list of individuals that defendant Parekh intends to call at the trial in this action (if the case is tried) as well as a list of documents that defendant Parekh would use at said trial." [D.E. 67] 1; see also [D.E. 100] 1. Additionally, Parekh responded to Phillips's request for admissions [D.E. 102]. Thus, as to Parekh, Phillips's discovery motions [D.E. 57, 93, 95] are denied as moot.

Igboekwe and Basu object to conducting additional discovery and assert the defense of qualified immunity. See [D.E. 68] 1; see also [D.E. 58, 86, 98].[5] A ruling on a defendant's claim of qualified immunity should be made early in the proceedings so that the costs and expenses of trial are avoided when the defense is dispositive. See Pearson v. Callahan, 555 U.S. 223, 231–32 (2009). The defense of qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation . . . ." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985); see Harlow v. Fitzgerald, 457 U.S. 800, 817–18 (1982). Accordingly, defendants are entitled to resolution of their defense of qualified immunity before being subject to the burdens of litigation, including discovery. See, e.g., Anderson v. Creighton, 483 U.S. 635, 640 n.2 (1987); Harlow, 457 U.S. at 817–18; Lescs v. Martinsburg Police Dep't, 138 F. App'x 562, 564 (4th Cir. 2005) (per curiam) (unpublished). Therefore, the court grants defendants' motions for a protective order [D.E. 58, 86], and denies plaintiff's motions [D.E. 57, 93].

As for Phillips's motion for reconsideration of the court's February 17, 2012 order denying his request for medical records, [D.E. 92] 2–3, Federal Rule of Civil Procedure 54(b) states that

> any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action

---

[5] In support of their motions for summary judgment, these defendants have produced approximately 185 pages of medical records to Phillips.

4

as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b). Before a final order is entered, "a district court retains the power to reconsider and modify its interlocutory judgments, including partial summary judgments, at any time prior to final judgment when such is warranted." Am. Canoe Ass'n, Inc. v. Murphy Farms, Inc., 326 F.3d 505, 514–15 (4th Cir. 2003) (citing Fayetteville Investors v. Commercial Builders, Inc., 936 F.2d 1462, 1469 (4th Cir. 1991)). "Motions for reconsideration of interlocutory orders are not subject to the strict standards applicable to motions for reconsideration of a final judgment," but are "committed to the discretion of the district court . . . ." Id.; see Saint Annes Dev. Co., Inc. v. Trabich, 443 F. App'x 829, 832 (4th Cir. Aug. 17, 2011) (per curiam) (unpublished). Phillips has not presented any argument warranting reconsideration. Thus, the motion is denied.

## II.

Phillips is incarcerated at Tillery Correctional Center. See N.C. Dep't of Corr., Offender Pub. Info., http://webapps6.doc.state.nc.us/opi/viewoffender.do?method=view&offenderID= 0970085 (last visited Sept. 12, 2012). Phillips's allegations concern medical care that he received in 2007 while he was a pretrial detainee at Central Prison Hospital ("CPH") in Raleigh and at the Burke Catawba District Confinement Center. See Compl. 5–7. On May 2, 2007, Phillips was transferred to CPH from Burke pursuant to a safekeeper transfer order for follow-up treatment for a foot ulcer and osteomyelitis (bone infection). Igboekwe Aff. [D.E. 77] ¶¶ 10–11; Basu Aff. [D.E. 80] ¶ 4. Phillips is a diabetic, and reported that he had the ulcer for two years before his incarceration in 2007. Igboekwe Aff. ¶ 7 & Ex. 3.

On May 3, 2007, Igboekwe, a CPH physician, examined Phillips and reviewed his medical history, including an MRI that Phillips received on April 30, 2007, at Grace Hospital in Morganton,

5

North Carolina. Id. ¶ 12. Igboekwe ordered treatment with three different antibiotics, and sought utilization review approval for consultations with the Infectious Disease Clinic and Podiatry Clinic. Id. ¶ 12 & Exs. 4–5. Igboekwe continued to examine Phillips and monitor his medical care until June 14, 2007, when Phillips was transferred to CPH's Mental Health Unit following an apparent suicide attempt in response to threats towards Phillips by other inmates. See, e.g., id. ¶¶ 17, 19–21, 23, 33, 43, 50, 52, 54 & Exs. 9–12, 14–15, 21, 27–28, 30, 33, 35, 37; Pl.'s Resp. Opp'n Igboekwe Mot. Summ. J. [D.E. 91] 3–4. Although Phillips was no longer under Igboekwe's care upon his transfer, Igboekwe dictated a discharge summary for the Mental Health Unit and noted that Phillips was scheduled for a June 18, 2007 evaluation at UNC Hospitals. Igboekwe Aff. ¶ 55 & Ex. 38.

On May 17, 2007, a CPH podiatrist examined Phillips and "discussed at length with inmate Phillips the treatment options, including the recommendation to surgically remove the infected bone," but did not schedule any surgery for Phillips because Phillips indicated that he wanted to wait two more weeks to let the antibiotics get the septic poison out of his system. Id. ¶ 30 & Ex. 19; Pl.'s Resp. Opp'n Igboekwe Mot. Summ. J. 1–2. On May 31, 2007, another CPH podiatrist (Stewart) examined Phillips and "discussed with inmate Phillips the need for amputation of his toe and metatarsal due to [a] bone infection" but did not schedule any surgery for Phillips. Igboekwe Aff. ¶ 41 & Ex. 26. On June 7, 2007, Stewart re-examined Phillips "for possible surgical consultation" and "had a lengthy conversation with Mr. Phillips as [Stewart] did [the] week [before] when [he] told [Phillips that] amputation of the left second toe was needed along with [a] resection of [the] bone of [the] left second metatarsal" and "told [Phillips that] he had to make a decision whether [to] do the surgery . . . ." Pl.'s Resp. Opp'n Parekh Mot. Summ. J. [D.E. 90] Ex. A (medical note).

On May 25, 2007, Parekh, an orthopedic surgeon at UNC Hospitals in Chapel Hill, North Carolina, examined Phillips and "observed a third grade diabetic ulcer of the left foot." Parekh Aff.

6

[D.E. 74] ¶¶ 2, 4–5 & Ex. A. Parekh determined that "more information was needed prior to surgery" and ordered various tests and requested a copy of the April 30, 2007 MRI. Id. ¶ 6. A health care provider at CPH reviewed Parekh's notes and ordered Parekh's requested tests, including an MRI that was performed on June 8, 2007. Igboekwe Aff. ¶¶ 35, 49 & Exs. 23, 32. On June 18, 2007, Parekh examined Phillips again, and because CPH did not send Phillips to the appointment with his MRI, rescheduled Phillips for a return visit in three days. Parekh Aff. ¶¶ 7–8 & Ex. A. On June 20, 2007, in response to a request by CPH, UNC Hospitals faxed a copy of Parekh's June 18, 2007 clinic notes to CPH. Id. ¶ 9. On June 22, 2007, a CPH mental health physician noted that Phillips needed to return to UNC Hospitals with his MRI. Id. ¶ 10 & Ex. C.

During the course of his treatment at CPH, Phillips was being treated for both his foot condition and several chronic conditions with approximately twelve different medications, including four antibiotics, two pain medications, and various medications to help control his diabetes. See, e.g., Igboekwe Aff. ¶ 60; Basu Aff. ¶¶ 9, 16 & Exs. 4, 8, 10. Phillips frequently refused to take several of his medications. Igboekwe Aff. ¶¶ 24–26, 31, 37, 60 & Exs. 16, 20, 24; Basu Aff. ¶¶ 14, 16–18, 20–21, 25, 29–30 & Exs. 8, 10, 12, 14, 17. On June 4, 2007, Basu, a CPH nurse,

> inadvertently administered 1500mg (1.5g) of [the antibiotic] Vancomycin . . . instead of 1000mg (1.0g) of Vancomycin . . . [even though] the dosage had been lowered from 1.5g to 1.0g on or about May 29, 2007 . . . . After administering the Vancomycin, [Basu] notified the appropriate personnel at CPH and notified Dr. Igboekwe. Dr. Igboekwe reviewed inmate Phillips' [sic] chart at that time and ordered that his Vancomycin levels be checked to ensure that there was not a dangerous level of Vancomycin in inmate Phillips' [sic] system. Upon information and belief, . . . [t]he Vancomycin levels were normal and were not at a level to cause toxicity or injury to inmate Phillips. Inmate Phillips' [sic] Vancomycin . . . levels continued to be monitored to ensure that he was receiving safe levels of the drug.

Basu Aff. ¶ 27 & Ex. 16; see Compl. 5 (alleging that Basu gave Phillips discontinued antibiotics that were spoiled, even though Igboekwe allegedly had ordered the medication stopped). Although

Phillips asserted that he suffered eye and kidney damage as a result of the overdose, lab tests reveal normal kidney function, and no medical evidence indicates that Phillips's eyesight was affected. Igboekwe Aff. ¶ 43 & Exs. 27–28. Phillips asserts that Igboekwe had reduced the dosage of Vancomycin because the higher dosage was "burning up [Phillips's] kidneys" and that Basu ignored Phillips's repeated assertion that she was giving him the wrong dose. [D.E. 65] 2–3; see also Pl.'s Resp. Opp'n Basu Mot. Summ. J. [D.E. 89] 3–4.

On June 22, 2007, the CPH Mental Health Unit discharged Phillips to return to Burke. Igboekwe Aff., Ex. 40; see also Piland Aff. [D.E. 47-1] Ex. A. The safekeeper discharge order, which a CPH physician signed, did not mention anything about Phillips needing surgery. Piland Aff. Ex. A. Upon Phillips's return to Burke, Walker examined him and "determined that the infection in . . . Phillips' [sic] left foot had healed." Id. ¶ 11 & Ex. B; cf. [D.E. 50] 3 (acknowledging "the half truth [that] the ulcer was healed the infection was gone" but noting that Phillips still needed surgery). Ultimately, CPH returned Phillips to UNC Hospitals on August 27, 2007, when Parekh "admitted [Phillips] to UNC Hospital" and performed a "left foot second ray amputation for osteomyelitis with bone graft of the remaining medullary canal of the second metatarsal" on September 4, 2007. Parekh Aff. ¶¶ 8, 11–14. Parekh provided follow up care in 2007. Id. ¶¶ 16–18. Phillips asserts that Parekh told him after the surgery that "'due to the delay of the state getting [Phillips] to [Parekh, Parekh] had to take more of [Phillips's] foot.'" Pl.'s Resp. Opp'n Parekh Mot. Summ. J. 6.

### III.

In analyzing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted," a court must determine whether the complaint is legally and factually sufficient. See Fed. R. Civ. P. 12(b)(6); Ashcroft v. Iqbal, 556 U.S. 662, 677–80 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 569–70 (2007); Coleman v. Md. Ct. of

8

Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 132 S. Ct. 1327 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008); Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007) (en banc); accord Erickson v. Pardus, 551 U.S. 89, 93–94 (2007) (per curiam). A court need not accept a complaint's "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement . . . ." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009); see also Iqbal, 556 U.S. 677–80. Similarly, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 677–80. Moreover, a court may take judicial notice of public records without converting a motion to dismiss into a motion for summary judgment. See, e.g., Fed. R. Evid. 201; Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

Summary judgment is appropriate when, after reviewing the record taken as a whole, no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis and quotation omitted). A trial court reviewing a motion for summary judgment should determine whether a genuine issue of material fact exists for trial. Anderson, 477 U.S. at 249. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007).

9

Courts evaluate confinement conditions of pretrial detainees under the Due Process Clause of the Fourteenth Amendment, rather than under the Eighth Amendment. See, e.g., Bell v. Wolfish, 441 U.S. 520, 535 n.16 (1979). As a practical matter, the analysis under the Due Process Clause and the analysis under the Eighth Amendment is materially indistinguishable. See, e.g., Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999); Riley v. Dorton, 115 F.3d 1159, 1166–67 (4th Cir. 1997) (en banc), abrogated on other grounds by Wilkins v. Gaddy, 130 S. Ct. 1175 (2010) (per curiam); Hill v. Nicodemus, 979 F.2d 987, 990–92 (4th Cir. 1992). To state a section 1983 claim for inadequate medical care, a pretrial detainee must show deliberate indifference to his serious medical needs in violation of his due process rights. See, e.g., Estelle v. Gamble, 429 U.S. 97, 104–05 (1976); Young v. City of Mount Ranier, 238 F.3d 567, 575 (4th Cir. 2001); Nicodemus, 979 F.2d at 991–92. To prove such a claim, Phillips "must demonstrate that the officers acted with 'deliberate indifference' (subjective) to [his] 'serious medical needs' (objective)." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (quoting Estelle, 429 U.S. at 104). A pretrial detainee, however, is not entitled to choose his course of treatment. See Russell v. Sheffer, 528 F.2d 318, 318–19 (4th Cir. 1975) (per curiam). Likewise, mere negligence in diagnosis or treatment does not state a constitutional claim. See, e.g., Estelle, 429 U.S. at 105–06.

Deliberate indifference requires that a defendant know of and purposefully ignore "an excessive risk to inmate health or safety . . . ." Farmer v. Brennan, 511 U.S. 825, 837 (1994). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause . . . ." Whitley v. Albers, 475 U.S. 312, 319 (1986), abrogated on other grounds by Wilkins, 130 S. Ct. 1175. Deliberate indifference "sets a particularly high bar to

10

recovery." Iko, 535 F.3d at 241. "In order to establish a claim of deliberate indifference to [a] medical need, the need must be both apparent and serious, and the denial of attention must be both deliberate and without legitimate penological objective." Grayson, 195 F.3d at 695.

Defendants have demonstrated that they did not act with deliberate indifference to Phillips's medical needs. See, e.g., Igboekwe Aff. ¶¶ 6–60; Parekh Aff. ¶¶ 1–18; Basu Aff. ¶¶ 5–33. On the contrary, defendants addressed Phillips's foot condition (and other medical issues) with a number of medications, examinations, and other testing. See, e.g., Webb v. Hamidullah, 281 F. App'x 159, 166–67 (4th Cir. 2008) (per curiam) (unpublished). Although Phillips asserts that he was in fact scheduled for surgery before his June 22, 2007 transfer back to Burke, the record demonstrates that he was not. See, e.g., Parekh Aff. ¶¶ 3–14; Igboekwe Aff. ¶¶ 4–60. Phillips confuses the fact that numerous physicians discussed the need for surgery with him with the idea that any physician actually scheduled surgery for a particular date.

As for Basu, she was (at most) negligent on June 4, 2007, in administering Phillips an incorrect dose of medication, which does not rise to the level of an Eighth Amendment violation. See, e.g., Whitley, 475 U.S. at 319; Estelle, 429 U.S. at 105–06; Sosebee v. Murphy, 797 F.2d 179, 181 (4th Cir. 1986). Given Phillips's repeated refusal to take various prescribed medications, it was not deliberate indifference for Basu to disregard Phillips's assertion that he was not supposed to take his former dose of medication. Moreover, Basu immediately reported her error to Igboekwe, who tested Phillips to ensure he was not harmed by the medication.

As for Parekh, he was not deliberately indifferent to wait to schedule Phillips for surgery until he obtained and reviewed additional testing, and he had no involvement in Phillips's June 22, 2007 transfer from CPH to Burke. Thus, Parekh is entitled to summary judgment. See, e.g., Swiney v. Badgett, No. 1:09cv926 (LMB/JFA), 2011 WL 1086386, at *4 (E.D. Va. Mar. 22, 2011)

(unpublished), aff'd, 443 F. App'x 820 (4th Cir. 2011) (per curiam) (unpublished).

As for Walker, Phillips now asserts that on or around May 27, 2007, Walker "let . . . Phillips lay 3 days with septic blood poison with a fever of 102.3 throwing up green bile with a total dead blacken [sic] toe with osteomyelitis poison" before sending him to Grace Hospital. See Resp. Opp'n Walker Mot. Dismiss [D.E. 110] 2. The medical records attached to Igboekwe's affidavit belie this claim. See Igboekwe Aff. ¶¶ 36–38, Exs. 23–25. Indeed, Walker was a nurse at Burke, not CPH, and Phillips was at CPH in late May 2007. See Igboekwe Aff. ¶¶ 10–11. Moreover, to the extent that Phillips contends that Walker's alleged conduct took place on or around April 28, 2007 (see [D.E. 1] 5), the medical records also belie this claim. See Igboekwe Aff. ¶¶ 6–11, Ex. 3. Thus, Walker was not deliberately indifferent to Phillips's medical condition.

In sum, Phillips's deliberate indifference claims fail against all defendants. Accordingly, the court grants the motions for summary judgment of Basu, Igboekwe, and Parekh, and the motion to dismiss of Walker.

## IV.

Accordingly, the court GRANTS defendants' motions to dismiss and for summary judgment [D.E. 73, 76, 79, 108] and for protective orders [D.E. 58, 86], and DENIES plaintiff's motions [D.E. 57, 64, 84, 93–95]. The Clerk of Court shall close the case.

SO ORDERED. This 12 day of September 2012.

JAMES C. DEVER III
Chief United States District Judge

Case 5:10-ct-03069-D   Document 111   Filed 09/13/12   Page 12 of 12